NOV 12 '10 AM 9:20 USB

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

ROBERT M. BRADLEY

Debtor

Chapter 7

Case No. 10-12152 - WCH

# DEBTOR'S RESPONSE TO SECOND MOTION OF LBM FINANCIAL, LLC TO EXTEND DEADLINE FOR FILING OBJECTION TO DISCHARGE

1. LBM is a creditor of the Debtor and was the author of countless loan agreements and addendums to which the Debtor signed which basically rendered the Debtor without authority to do much of anything, primarily leaving LBM in control of any and all projects and related loans to the Debtor. Debtor was one of a great many Borrowers who filed lawsuits against LBM and Debtor did in fact file a 20 Count RICO Case against LBM and their affiliated entities denying that Debtor actually owed LBM anything, but rather LBM owed the Debtor $millions . This lawsuit was ultimately withdrawn due to Debtor's inability to afford the years of legal costs required to prevail in the Federal Courts.

2. LBM has had extremely intimate knowledge of any and all of the Debtor's financial affairs for 10 years now and is very well aware that they have taken everything that Debtor has. Moreover, in almost every loan between the Debtor and LBM, Debtor was only a Personal Guarantor and over the years and many loans made to the various projects, Debtor personally received probably less than $10,000. in total out of close to $20,000,000. in loans. This is all well documented by LBM and well known amongst their Principals, Partners and Attorneys. Additionally, in all cases wherein loans were in default, LBM ended up with the collateral/project/land that the loans were based on in the first place.

   a. In reference to Debtor's quote in a previous deposititon regarding his "accepting a couple hundred thousand dollars" from a Bernard Laverty in or around 2004/2005 that were never documented, Debtor admits this in fact did take place. There was no documentation and again, this was not for personal use. Debtor and Laverty were friends and becoming development partners at the time and Debtor was overseeing and assisting the operations of 6 different restaurants/clubs at the time, all that were financed by LBM who held all of these operations in their entirety as collateral for their loans. Debtor and Laverty had hoped to be partners in these ventures as well if they could successfully pay off or refinance LBM out of all their loans. Debtor estimates that over 90% of the funds advanced by Laverty were used to re-open seasonal restaurants in the spring and several others

were reinvented with new concepts and capital improvements to ones that had gone stale (i.e. changing a "Ocean Grill' to "Rumba Tex-Mex", "Goodfellas" to "Retro Café" ect.). Debtor successfully paid LBM countless payments over 4-5 years and kept all of these operations open until LBM forced Debtor to sign them over to them. Since then all of them went out of business and the one that remains seems to have a new tenant every 6 months at best. Nearly all of the funds loaned to Debtor from Laverty went into capital improvements to properties that ultimately benefited LBM. Any and all of these funds came from two Security Companies Laverty owned at that time (PL Consulting and Sharp & Associates) and had nothing to do with any of the development projects related to LBM loans whatsoever.

b. LBM or its latest Attorney for LBM, claims in their Motion, Section 2.b, that "Mr. Bradley, Mr. Laverty and others established an entity called Platinum Investments LLC to control the finances of these construction projects." This is absolutely false and the Principals of LBM et al know it. Debtor was regrettably introduced to all of these various parties by a trusted lawyer friend and longtime colleague, Frank Kirby, who described them "as a bunch of hard working guys that have some great projects in and around Boston, but they need a guy like you to organize it all and get it financed". Upon information and belief, Debtor only knew of Platinum Investments to be an entity completely controlled by an individual named Frank Fraine through his long term lawyer/accountant and "straw" owner, Barry Queen. Debtor has never been involved in any way with Platinum Investments (never a Principal, Stockholder or Corporate Officer or on any bank accounts, no involvement in any capacity whatsoever) and it has been known for years to LBM the Debtor's tremendously strong bad feelings towards its Principals. This attempted affiliation is a complete moot point. Moreover, Debtor was merely an additional Guarantor on all these loans and was never on any of the bank accounts that operated these projects or in most all cases, never even an Officer, Director or Principal in any of the Corporations that borrowed the funds. Additionally, all these entities related to any and all LBM loans are from years ago, have gone out of business and any and all assets they may have had have already been foreclosed upon or seized by LBM.

c. Debtor has no knowledge of any of the claims by LBM in its Motion, Section 2.c. as none of it applies to the Debtor and Debtor has no idea how to respond to anything involving Mr. Laverty. Debtor did drive a 2002 Lexus 300 that was the personal car of Mr. Laverty's from roughly the fall of 2005 – spring of 2008, but this had nothing to do with Platinum Investments. Debtor's personal car had run into the ground and Mr. Laverty offered the car that had been sitting in his driveway to the Debtor. Debtor believes this car to have been a personal car loan Laverty took out in 2002 before he had any association with any of these development projects or LBM loans. When Laverty gave use of the car to Debtor the car had probably 75,000 miles on it. Debtor thought Laverty owned the car and made the insurance payments while he had its use. On or around the spring of 2008, Laverty informed the Debtor that the finance company related to this vehicle had been hounding him to buy it out or they were to repossess the car as it had been in default for quite some time. The car now had 130,000 miles on it and

was not worth what was owed on it and neither Debtor nor Laverty was in a position to purchase the car at the time, so Debtor surrendered the car back to Laverty.

3. LBM has had 10 years of extremely intimate knowledge of all of Debtor's personal finances, more than ample time to substantiate any kind of challenge to oppose Debtor's discharge.

4. LBM has now been granted two additional 60 day time periods up and until its last extended deadline of October 22, 2010 to conduct its discovery to find basis to warrant any objection to Debtor's discharge and has failed to do so within the time allotted by this Honorable Court. LBM has not contacted Debtor once during the entire time since Debtor filed this Case seeking any additional information and therefore Debtor respectfully requests this Honorable Court to allow for its discharge to move forward.

Respectfully Submitted,

Robert M. Bradley
    Debtor,
By,

*[signature]*

Robert M. Bradley

NOV12'10 AM 9:20 USB